**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**TERRELL CURTIS** **PLAINTIFF**

**v.** **CASE NO. 4:25-CV-00691 BSM**

**CITY OF MAUMELLE, et al.** **DEFENDANTS**

**BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

COME NOW, Defendants herein, by and through counsel, Sara Monaghan, and for their Brief in Support of Motion for Summary Judgment, state the following:

## I. Introduction

Defendants City of Maumelle, the City of Maumelle Planning and Permits Department, Mayor Caleb Norris, City Council Members LJ Wesley, Christine Gronwald, Wes Booker, Chad Gardner, Terry Williams, Michael Tierney, Doug Shinn, and Jess Holt, and Scott Grummer (collectively, "Defendants") move for summary judgment on all claims asserted by Plaintiff Terrell Curtis. The undisputed record establishes that the City identified structural and stormwater deficiencies at 116 Delaware Lane; revoked Plaintiff's building permit after periods of more than three months with no appreciable progress as provided in the Maumelle City Code; afforded notice and an opportunity to be heard; and proceeded under codified nuisance and condemnation procedures. On these facts, there is no genuine dispute of material fact, and Defendants are entitled to judgment as a matter of law.

## II. Statement of Facts

A recitation of the undisputed material facts is contained in the Statement of Uncontested Material Facts (hereinafter, "SUMF") filed along with this Brief.

## III. Summary Judgment Standard

The Federal Rules of Civil Procedure provide that a motion for summary judgment will be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(c). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it should be interpreted in a way that allows it to accomplish this purpose." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). As the United States Court of Appeals for the Eighth Circuit recognizes, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Wabun-Inini v. Sessions*, 900 F.2d 1234, 1238 (8th Cir. 1990) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1)).

The party moving for summary judgment has the initial burden of informing the court of the basis for its motion and identifying the pleadings, admissions, discovery documents and affidavits it contends show the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. However, the moving party does not have the burden of negating the other party's claim. The movant meets its burden merely by "pointing out" to the district court that there is an "absence of evidence to support the nonmoving party's case." *Id*. at 325. The nonmoving party must then go beyond its own pleadings to designate specific facts raising a genuine triable issue. *Id*. at 324; *See also Counts v. MK-Ferguson Co.*, 862 F.2d 1338, 1339 (8th Cir. 1988).

In order to establish that a genuine issue of material fact exists, the nonmoving party must show that (1) there is a factual dispute, (2) the disputed fact is material to the outcome of the case and (3) the dispute is genuine. *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 401

(8th Cir. 1995). A dispute is genuine only if a reasonable jury could return a verdict for either party. *Id.*; *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *See also McLaughlin v. Esselte Pendaflex Corp.*, 50 F.3d 507, 510 (8th Cir. 1995). "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather the dispute must be outcome determinative under prevailing law." *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989). Stated otherwise, a dispute about a material fact is genuine only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 242 (1986).

## IV. Argument

### A. Plaintiff's procedural due process claim fails as a matter of law.

The Fourteenth Amendment requires that a person receive notice and an opportunity to be heard before the government deprives her of a property interest. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). *Mathews v. Eldridge*, 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976)**,** established the balancing test: courts weigh (1) the private interest affected, (2) the risk of erroneous deprivation and the probable value of additional safeguards, and (3) the government's interest. *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 542 (1985). *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985)**,** confirmed that the state may not deprive a person of property without notice and the opportunity to be heard.

The Eighth Circuit has articulated a clear, defendant-favorable rule: where a property owner is given written notice to abate a hazard on his or her property and has been given an opportunity to appear before the proper municipal body considering condemnation of the property, no due process violation occurs when the municipality abates the nuisance pursuant to the condemnation notice. *Samuels v. Meriwether*, 94 F.3d 1163, 1166–67 (8th Cir. 1996) (upholding City of Hope, Arkansas condemnation after 30-day notice and city board of directors hearing; no additional notice of the demolition decision required). The court in *Samuels* grounded this rule in

*Mathews v. Eldridge*, 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976) and in *Hagen v. Traill County*, 708 F.2d 347, 348 (8th Cir. 1983) (per curiam) (upholding destruction of building for failure to abate nuisance after notice and hearing).

The procedural adequacy of the municipality's safeguards is a question of law for the court. *Stauch v. City of Columbia Heights*, 212 F.3d 425, 431 (8th Cir. 2000). *Stauch v. City of Columbia Heights*, 212 F.3d 425 (8th Cir. 2000)**.**

The Arkansas Supreme Court expressly adopted the *Samuels* rule. *Ingram v. City of Pine Bluff*, 355 Ark. 129, 136, 133 S.W.3d 382, 386 (2003) (no due process violation where owner received notice of city council meeting a month in advance, meeting was televised, and city waited 120 days before demolishing; due process does not require additional opportunities to abate nuisances after notice and hearing); *Convent Corp. v. City of North Little Rock*, 2021 Ark. 7, 615 S.W.3d 706, 714–15 (2021) (affirming summary judgment for city; condemnation ordinance providing for adequate notice, public hearing, and appeal information was not facially unconstitutional; city not required to provide opportunity to rehabilitate structure following condemnation).

Where a property owner has actual notice that the city intends to condemn a building, the city's destruction of the building does not violate procedural due process even if the owner did not receive formal notice of the condemnation decision or see a posted condemnation sign. *Samuels v. Meriwether*, 94 F.3d at 1167. Similarly, a landowner's failure to utilize available predeprivation remedies—including failing to attend a condemnation hearing, failing to appeal the condemnation order, and failing to raise specific objections in subsequent proceedings—may constitute waiver of procedural due process claims under the circumstances. *Hroch v. City of Omaha*, 4 F.3d 693, 696 (8th Cir. 1993).

In this case, before condemnation, the City issued written notice of the public hearing, identified the nuisance basis, and advised the owner, mortgagees, and lienholder of their right to appear and present evidence or corrective plans. The City set a May 19, 2025, public hearing on condemnation at City Hall with time and place stated. **SUMF 28**. The notice advised owners, mortgagees, and lienholders of their right to attend and present evidence, arguments, objections, or plans for corrective action. *Id.* On May 19, 2025, the Council heard objections, evidence, and argument at a public hearing. **SUMF 34.**

The Council determined the structure was a nuisance under § 38-3(15) and condemned it under §§ 38-60 et seq. *Id.* The resolution further afforded a 30-day abatement window before any City removal action. The resolution allowed thirty days to tear down, remove, or otherwise abate the nuisance before City removal. **SUMF 33**.

**B. Plaintiff's substantive due process claim fails as a matter of law.**

To demonstrate a violation of substantive due process, a plaintiff must show that government officials used their power in such an arbitrary and oppressive way that it shocks the conscience, though the level of culpability required to meet this standard varies depending on the circumstances and whether officials had opportunity for deliberation. *County of Sacramento v. Lewis*, 523 U.S. 833, 845–46, 850 (1998). The Eighth Circuit has repeatedly and emphatically applied a restrictive standard in the land-use and municipal enforcement context: the plaintiff must show more than that the government decision was arbitrary, capricious, or in violation of state law — the action must be truly irrational. *Chesterfield Development Corp. v. City of Chesterfield*, 963 F.2d 1102, 1104–05 (8th Cir. 1992) (the theory of substantive due process is properly reserved for truly egregious and extraordinary cases; an example of truly irrational action would be attempting to apply a zoning ordinance only to persons whose names begin with a letter in the first half of the

alphabet). *Anderson v. Douglas County*, 4 F.3d 574, 577 (8th Cir. 1993) (claimant must show action was truly irrational, something more than arbitrary, capricious, or in violation of state law). *Azam v. City of Columbia Heights*, 865 F.3d 980, 986 (8th Cir. 2017) (upholding summary judgment for city on substantive due process claim arising from nuisance-call fees and code enforcement; allegations must demonstrate a truly irrational governmental action; the government action must be arbitrary in the constitutional sense).

The Eighth Circuit takes a restrictive view of when land use planning decisions by local government agencies violate an aggrieved party's substantive due process rights, and even allegations of bad faith enforcement of an invalid zoning ordinance do not, without more, state a substantive due process claim. *Bituminous Materials, Inc. v. Rice County*, 126 F.3d 1068, 1070–71 (8th Cir. 1997).

The undisputed facts of this case simply demonstrate the enforcement of an ordinance based on the furtherance of the health, safety, and welfare of the public. Plaintiff's permit was revoked on August 2, 2023, and again on January 16, 2025, each time due to periods exceeding three months with no appreciable progress and persistent structural and stormwater deficiencies. The City revoked Plaintiff's permit on August 2, 2023, citing no appreciable progress and stem wall failure. The City again revoked the permit on January 16, 2025, for more than three months without appreciable progress. Plaintiff admitted inactivity for at least three months as the stated basis for revocation. Plaintiff acknowledged the permit was revoked for inactivity for three months.

The City's Code expressly defines a nuisance to include permitted structures under construction with no appreciable progress for over three months and authorizes condemnation and abatement under §§ 38-60 et seq. The Maumelle City Code defines as a nuisance any permitted

structure under construction upon which no appreciable progress is made for more than three months. The City Council considers condemnation under Maumelle City Code §§ 38-60 through 38-76. **SUMF 32-33**.

The City also documented substantial compliance concerns, including foundation wall failure, non-interlocked CMU corners, required engineering beyond prescriptive code, and repeated stormwater control failures and silting of adjacent property. The City found foundation wall failure with non-interlocked CMU corners and a wall height requiring engineering, resulting in a failed inspection. The City failed Plaintiff's stormwater inspection and documented excessive silting to an adjacent property. Subsequent stormwater controls inspections continued to fail in July 2023. These undisputed deficiencies independently support the City's actions. **SUMF 6-10.**

Plaintiff claims the City demanded a $50,000 surety bond not authorized by ordinance and refused reinstatement despite "full compliance." Plaintiff alleges the City demanded a $50,000 surety bond as a precondition to reinstatement without a basis in the City's written Code. **Complaint ECF No. 2**. The record shows, however, that the City sought reasonable information relevant to project completion and lien status, which Plaintiff acknowledged receiving and partially providing. On February 11, 2025, the City requested information regarding financing and the lien to assess reinstatement. *Id.* Plaintiff acknowledged receiving the email identifying the items needed for permit reinstatement. **SUMF 24**. Plaintiff further acknowledged an outstanding materialmen's lien and financing constraints. A materialmen's lien for $10,485.28 remained outstanding, with a returned check noted by Heslep. **SUMF 25**. Gateway Bank had an outstanding construction mortgage, and Plaintiff stated $130,000 in outstanding construction loans.

In light of inactivity and unresolved liens, Defendants' requests for financial and lien documentation were legitimate and within the City's administrative oversight of permits and code

compliance. Plaintiff's bare assertion of "full compliance" cannot overcome contemporaneous City records documenting no appreciable progress from September 11, 2024, to December 12, 2024, and the January 16, 2025 revocation. No appreciable progress was reported between September 11, 2024, and December 12, 2024. **SUMF 20**. The permit was revoked on January 16, 2025, for more than three months with no appreciable progress. **SUMF 22**.

To the extent Plaintiff suggests that demolition was predetermined or carried out without process, Defendants' discovery responses confirm that demolition "was not authorized or pursued" at the relevant times, and the Council's resolution provided for a 30-day abatement period prior to any City action. Defendants stated demolition was not authorized or pursued. **SUMF 36**. The resolution required a 30-day period for abatement before any City removal. *Id.* Based on these undisputed facts, Defendants are entitled to summary judgment on the Plaintiff's substantive due process claim.

**C. Plaintiff's equal protection claim fails as a matter of law.**

The Equal Protection Clause requires that the government treat all similarly situated people alike. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). (per curiam) (recognizing class-of-one claims where plaintiff alleges intentional differential treatment from others similarly situated and no rational basis for the difference). The class-of-one theory is grounded in the principle that the Fourteenth Amendment requires that all persons subjected to legislation shall be treated alike under like circumstances and conditions. *Engquist v. Oregon Department of Agriculture*, 553 U.S. 591, 601–02 (2008).

In the zoning or municipal ordinance context, courts reviewing a class-of-one discrimination claim may not reverse a municipality's decision merely because a contrary result may be permissible; rather, courts may only ascertain whether there has been a transgression upon

the property owner's constitutional rights. *Northland Management & Construction, LLC v. City of Parkville*, No. 25-2239, 2026 WL 2223867, at *3 (8th Cir. Aug. 3, 2026) (affirming this limitation and requiring a specific and detailed account of the nature of the preferred treatment of the favored class). *Mensie v. City of Little Rock*, 917 F.3d 685, 692–93 (8th Cir. 2019) (affirming summary judgment for city; applicant failed to establish disparate treatment to support class-of-one claim; courts are not to assume the role of a super zoning board).

To prevail on a class-of-one equal protection claim, the plaintiff must prove that the government intentionally and with no rational basis treated him less favorably than others; any material difference between how the plaintiff and those allegedly treated more favorably are situated is sufficient to provide a rational basis for differential treatment. *Bruning v. City of Omaha*, 6 F.4th 821, 826 (8th Cir. 2021) (affirming summary judgment for city on class-of-one claim arising from zoning enforcement). The threshold inquiry is whether the claimant is similarly situated to others who allegedly received preferential treatment. *Northland*, 2026 WL 2223867, at *3 (quoting *Robbins v. Becker*, 794 F.3d 988, 996 (8th Cir. 2015)).

A class-of-one plaintiff must provide a specific and detailed account of the nature of the preferred treatment of the favored class, especially when the state actors exercise broad discretion to balance a number of legitimate considerations. *Mensie*, 917 F.3d at 692 (quoting *Nolan v. Thompson*, 521 F.3d 983, 990 (8th Cir. 2008)). In an Arkansas condemnation context, an equal protection claim failed where the landowners failed to show they were similarly situated to other landowners in prior cases. *Parette v. Virden*, 173 F. App'x 534, 536 (8th Cir. 2006).

In this case, Plaintiff's equal protection claim fails because he has failed to establish that he is similarly situated to another citizen who received more favorable treatment from the City. Here, the structural and stormwater findings resulting in revocation furnish a rational basis for

enforcement and refute any claim of arbitrary or discriminatory action. Therefore, Defendants are entitled to summary judgment on this claim.

**D. Plaintiff's civil conspiracy claim fails as a matter of law.**

To succeed on his § 1983 conspiracy claim, Plaintiff must allege that (1) Defendants conspired to deprive him of a federal constitutional or statutory right, (2) "at least one of the alleged coconspirators engaged in an overt act in furtherance of the conspiracy," and (3) Plaintiff was injured by that overt act. *S.L. ex rel. Lenderman v. St. Louis Metro. Police Dep't Bd. of Police Comm'rs,* 725 F.3d 843, 850 (8th Cir. 2013) (quoting *Askew v. Millerd,* 191 F.3d 953, 957 (8th Cir. 1999)). To be liable for civil conspiracy, at least one of the Defendants must have committed some other underlying constitutional violation. *Novotny v. Tripp Cnty.,* 664 F.3d 1173, 1180 (8th Cir. 2011). Although a "conspiracy is not itself actionable in the absence of an underlying wrongful act...only one of the alleged conspirators must have committed [such an act.]" *Process Controls Int'l, Inc. v. Emerson Process Mgmt.,* 2011 WL 6091722, at *2 (E.D. Mo. Dec. 7, 2011) (citations and internal quotation marks omitted).

Even if the acts in furtherance of the conspiracy are adequately alleged, a plaintiff must do more than "merely allude to a meeting of the minds...[she] must support the assertion[s] with specific allegations of collusion." *Id.* at *3 (citing *Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.,* 406 F.3d 1052, 1063 (8th Cir. 2005)). A plaintiff must allege sufficient "specific facts" to give rise to an inference of a meeting of the minds among the defendants to violate the plaintiff's constitutional rights. *Murray v. Lene,* 595 F.3d 868, 870 (8th Cir. 2010). To be sufficiently specific, a plaintiff "must at least allege that 'the defendants had directed themselves toward an unconstitutional action by virtue of a mutual understanding,' and provide some facts 'suggesting such a "meeting of the minds." ' " *Smith v. Bacon,* 699 F.2d 434, 436-37 (8th Cir. 1983) (per

curiam) (quoting *White v. Walsh,* 649 F.2d 560, 561 (8th Cir. 1981)). "[T]he plaintiff need not show that each participant knew the exact limits of the illegal plan, but the plaintiff must show evidence sufficient to support the conclusion that the defendants reached an agreement to deprive the plaintiff of constitutionally guaranteed rights." *White v. McKinley,* 519 F.3d 806, 814 (8th Cir. 2008) (quotations and alterations omitted). At the pleading stage, the Court recognizes that "conspiracies are by their nature usually clandestine." *Walsh,* 649 F.2d at 561 (citation omitted). "[I]t is a rare case in which the plaintiff will be able to provide direct evidence of a conspiratorial agreement." *Bacon,* 699 F.2d at 437.

The Plaintiff cannot provide facts that would show that any of the Defendants reached any kind of agreement or understanding with any person to deprive the Plaintiff of his civil rights. Therefore, the Defendants are entitled to summary judgment and qualified immunity on the Plaintiff's civil conspiracy claim.

**E. The Defendants are not liable under takings law due to the abatement exception.**

The government owes a landowner no compensation for requiring him to abate a nuisance on his property, because he never had a right to engage in the nuisance in the first place. *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 160 (2021); *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 141 S. Ct. 2063, 210 L. Ed. 2d 369 (2021). For the nuisance abatement defense to apply, the government must identify background principles of state property law that made the plaintiff's use a nuisance. *Lucas*, 505 U.S. at 1029-32. *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 112 S. Ct. 2886, 120 L. Ed. 2d 798 (1992). The nuisance defense means there is no taking when a law or decree does no more than duplicate the results that could have been achieved in the courts. *Id.* at 1029. *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 112 S. Ct. 2886, 120 L. Ed. 2d 798 (1992). The federal regulatory taking doctrine does not apply to state action against public

nuisances. *ChemSol, LLC v. City of Sibley*, 386 F. Supp. 3d 1000, 1020 (N.D. Iowa 2019) ChemSol, LLC v. City of Sibley, Iowa, 386 F. Supp. 3d 1000 (N.D. Iowa 2019) (citing *Kelo v. City of New London*, 545 U.S. 469, 519-20 (2005)).

In this case, Plaintiff's property was declared a nuisance due to months of time with no progress in construction, which is originates in concerns with the public health and safety. Therefore, the Defendants are not subject to takings liability under the facts of this case.

**F. The Defendants are entitled to summary judgment on the Plaintiff's claims brought pursuant to the ACRA.**

Plaintiff has also asserted claims against the Defendants pursuant to the ACRA. The ACRA prohibits individuals acting under color of state law from depriving persons of their rights, privileges, or immunities secured by the Arkansas Constitution. Ark. Code Ann. §16-123-105; *see also, West v. Adkins,* 487 U.S. 42 (1988). It is stated expressly in the ACRA that courts "must look for guidance to state and federal decision pertaining to actions filed pursuant to the federal civil rights act, 42 U.S.C. §1983," when construing the ACRA. Ark. Code Ann. §16-123-105; *see also, Island v. Buena Vista Resort,* 352 Ark. 548, (2003). Therefore, Plaintiffs' claims pursuant to §1983 and the ACRA should be analyzed conterminously such that Plaintiffs' claims pursuant to the ACRA fail for the same reasons his §1983 claims fail.

**G. Plaintiff's unlawful search and trespass allegations are unsupported by material facts and cannot survive summary judgment.**

To the extent Plaintiff asserts unlawful search or trespass, he offered no factual basis in deposition. When asked about the unlawful search basis, Plaintiff deferred to counsel and provided no facts. When asked about trespass, Plaintiff likewise offered no factual basis. **SUMF 41**. Without evidence supporting essential elements, these claims cannot proceed.

**H. The Individual Defendants are entitled to qualified immunity and summary judgment.**

Even assuming *arguendo* that this court should find that the individual Defendants did violate the Plaintiff's Fourth Amendment rights in effectuating his detention and arrest, they are entitled to qualified immunity in their individual capacities. The doctrine of qualified immunity shields officials from liability "unless the official's conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known." *Johnson v. Carroll*, 658 F.3d 819, 825 (8th Cir. 2011). When ruling on qualified immunity, a court must first consider whether, taken in the light most favorable to the plaintiff, the facts show a violation of a particular constitutional right. *Saucier v. Katz*, 533 U.S. 194, 200 (2001). If the court finds no constitutional violation has occurred, then the official is entitled to qualified immunity; however, if the facts as construed could make out a violation, then a second inquiry is required. *Id.* The second inquiry requires determining whether the right is clearly established. *Id.*

The Supreme Court has emphasized that the second inquiry "must be undertaken in light of the specific context of the case, not a broad general proposition." *Brosseau v. Haugen*, 125 S. Ct. 596, 599 (2004). A right is clearly established only if "existing precedent [has] placed the statutory or constitutional question beyond debate." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (emphasis added). "The clearly established law must be 'particularized' to the facts of the case." *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "The dispositive question is 'whether the violative nature of particular conduct is clearly established.'" *Id.* (quoting *Aschroft v. al-Kidd*, 563 U.S. 731, 742 (2011) (emphasis original)). "Put simply, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* (quoting *Malley v. Briggs*, 476 U.S. 335, 341 (1986)). On appeal, the burden is on the Plaintiff to provide sufficient evidence to defeat both prongs of the qualified immunity analysis. *Gilmore v. City of Minneapolis*, 837 F.3d 827, 832 (8th Cir. 2016).

As argued above, the Defendants did not violate the Plaintiff's constitutional rights. At the least, there is no factually similar case which clearly establishes that any individual Defendants' actions in these circumstances violated the constitution. Therefore, the individual Defendants' actions did not violate clearly established law, and they are entitled to qualified immunity and summary judgment.

**I. The City is entitled to summary judgment on Plaintiff's state and federal constitutional claims.**

The Plaintiff has sued all Defendants in their official capacity, as well as the City of Maumelle itself. "The Supreme Court has held that an 'official capacity' suit is not a suit against the official personally, for the real party in interest is the government entity of which the officer is an agent,' *McCaslin v. Wilkins*, 17 F. Supp. 2d 840, 844 (W.D. Ark. 1998) (citing *Kentucky v. Graham*, 473 U.S. 159 (1985)). Official capacity suits represent "only another way of pleading an action against an entity of which an officer is an agent." *See Kentucky*, 473 U.S. at 166 (citing *Brandon v. Holt*, 469 U.S. 464, 471-472 (1985)). Thus, for purposes of this portion of the brief, the Defendants in their official capacities, and the City will be considered one and the same.

For municipal liability to attach under § 1983, a plaintiff must prove that a municipal policy or custom was the moving force behind the alleged constitutional violation. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978); *see, e.g., Handle v. City of Little Rock*, 772 F.Supp. 434, 437 (E.D. Ark 1991 )(holding that municipal liability may attach when the alleged unconstitutional act "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [municipal officials]"). The policy or custom requirement means that a municipality cannot be held vicariously liable for its employees' unconstitutional acts. *Monell*, 436 U.S.at 691; *see also Springdale Educ. Ass'n,* 133 F.3d at 651

(local government cannot be held liable under § 1983 on *respondeat superior* theory). As discussed below, as an initial matter and as demonstrated above, there has been no constitutional violation in the case at bar. Absent an underlying constitutional violation, the City may not be held liable under § 1983. *Los Angeles v. Heller*, 475 U.S. 796 (1986). Even assuming a constitutional violation occurred, the Plaintiff cannot demonstrate that a municipal policy, practice, or custom was the moving force behind the alleged constitutional violation, and the City is entitled to summary judgment.

**1. The City's written policies are constitutional on their face.**

The written, official policy of a city is to be given great weight in determining what the city's policies are." *Williams-El v. Johnson*, 872 F.2d 224, 230 (8th Cir. 1989). "[A] municipal policy is not unconstitutional if it might *permit* unconstitutional conduct in some circumstances; it is unconstitutional only if it '*requires* its officers to act unconstitutionally.'" *Handle*, 772 F.Supp. 434, 438 (citing *Kerr v. City of West Palm Beach*, 875 F.2d 1546, 1554 (11th Cir. 1989)) (emphasis in the original). A written, official policy that satisfies all statutory and constitutional requirements is constitutional as a matter of law; it cannot be said that such a policy officially requires law enforcement officers to commit constitutional violations. *See e.g., Andrews v. Fowler*, 98 F.3d 1069, 1077 (8th Cir. 1996) (finding that the policies comported to state laws governing training and education of law enforcement officers and that policies expressly directed officers to comply with constitutional standards).

The Plaintiff cannot point to any written official policy or ordinance of the City that requires its officers to act unconstitutionally because one does not exist. Therefore, the Plaintiff cannot demonstrate that the alleged constitutional violations were caused by the City's official written policies.

**2. The Plaintiff cannot demonstrate that there was a continuing widespread, persistent pattern of unconstitutional misconduct or deliberate indifference to or tacit authorization of such conduct.**

Custom is demonstrated by showing a continuing, widespread, persistent pattern of unconstitutional misconduct and deliberate indifference to or tacit authorization of such conduct after notice of such misconduct. *Rogers v. City of Little Rock, Ark.,* 152 F.3d 790, 800 (8th Cir. 1998). Here, the Plaintiff has not and cannot show a pattern of similar unreasonable searches and seizures within the Maumelle Code Enforcement. Without this showing, the Plaintiff cannot demonstrate any notice to the City of unconstitutional misconduct to which the City was deliberately indifferent and therefore cannot show that a custom exists within the City which would have caused any of the named officers to violate any of the Plaintiff's constitutional rights. As such, the City is entitled to summary judgment.

**J. The Defendants are entitled to tort immunity on the Plaintiff's trespass claim.**

A.C.A. 21-9-301 states in pertinent part:

> (a) It is declared to be the public policy of the State of Arkansas that all counties, municipal corporations, school districts, special improvement districts, and all other political subdivisions of the state and any of their boards, commissions, agencies, authorities, or other governing bodies shall be immune from liability and from suit for damages except to the extent that they may be covered by liability insurance.
>
> (b) No tort action shall lie against any such political subdivision because of the acts of its agents and employees.

Ark. Code Ann. § 21–9–301 (Repl.2004).

While it is true that the Arkansas Supreme Court has held that A.C.A. 21–9–301 provides cities and city officials with immunity from civil liability for negligent acts, but not for intentional

acts, *Deitsch v. Tillery,* 309 Ark. 401, 833 S.W.2d 760 (1992), the Arkansas Supreme Court has also recognized that in determining whether statutory immunity granted under A.C.A. 21-9-301 applies, a court should not focus merely on whether the tort is one of negligence or an intentional tort, but rather, the conduct of the actor and whether the actor acted in good faith. *Trammel v. Wright*, 489 S.W. 3d 636, 639-640 (2016). Based on the facts as set out above with respect to Plaintiff's constitutional claims, there is no case law on point which would clearly demonstrate to city officials at any step along the way that the facts of the case did not support their actions. Thus, because Plaintiff cannot prove that any city official intentionally entered his property without lawful authority, the City is entitled to immunity pursuant to A.C.A. 21-9-301.

**K. In the alternative, the Defendants are entitled to qualified immunity for Plaintiff's trespass claim.**

"The purpose of qualified immunity is to allow public officers to carry out their duties as they think right, rather than acting out of fear for their own personal fortunes." *Martin v. Hallum*, 210 Ark. App. 193, 374 S.W. 3d 152, 159 (2010) quoting *Greiner v. City of Champlin*, 27 F.3d 1346 (8th Cir. 1994). "Toward this end, [city] officers have qualified immunity from liability in their individual capacity unless they violate a clearly established right of which a reasonable person would know." *Martin,* 374 S.W.3d at 159 *(*quoting *Harlow v. Fitzgerald*, 457 U.S. 800 (1982)).

"In interpreting our qualified-immunity statutes, we have traditionally been guided by the analysis adopted by the United States Supreme Court for qualified-immunity claims in federal civil-rights actions." *Graham,* 427 S.W. 3d at 46, (*citing Fegans v. Norris,* 351 Ark. 200, 89 S.W.3d 919 (2002)). "A motion for summary judgment based on qualified immunity is precluded only when the plaintiff asserted a statutory or constitutional violation, demonstrated that the statutory or constitutional right is clearly established, and raised a genuine issue of fact as to whether the official would have known that the conduct violated that clearly established right." *Martin v.*

*Hallum*, 2010 Ark. App. 193, 10, 374 S.W.3d 152, 159-60 (2010) (*citing Smith v. Brt*, 363 Ark. 126, 211 S.W.3d 485 (2005)). Therefore, "[a]n official is immune from suit if his or her actions did not violate clearly established principles of law of which a reasonable person would have knowledge." *Smith,* 363 Ark. at 131, 211 S.W.3d at 489.

The objective reasonable-person standard is a legal inquiry and whether summary judgment on grounds of qualified immunity is appropriate from a particular set of facts is a question of law. *Id.* A determination as to immunity should be made prior to trial so that the benefit of the rule will not be lost. *Martin,* 210 Ark. App. 193, 374 S.W. 3d at 159 (*citing Simons v. Marshall*, 369 Ark 447, 255 S.W.3d 838 (2007)).

Given the law set out above, Plaintiffs cannot establish that an objectively reasonable person would have knowledge that any of the Defendants' conduct violated clearly established law, either state or federal. Therefore, the Defendants should be granted qualified immunity and summary judgment as a matter of law on all claims brought against them in this case.

**V. Conclusion**

Defendants enforced neutral, codified standards; provided notice and a public hearing; and acted on a documented record of structural failures, stormwater violations, inactivity exceeding three months, and unresolved liens. No genuine dispute of material fact exists, and Defendants are entitled to judgment as a matter of law on all claims. Defendants respectfully request that the Court grant summary judgment in their favor and dismiss Plaintiff's claims with prejudice.

Respectfully submitted,

BY: Sara Monaghan Ark. Bar No. 2005276
P.O. Box 38
North Little Rock, AR 72115
TELEPHONE: 501-978-6122
EMAIL: smonaghan@arml.org